UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONNIE R., III,

              Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

CASE NO. 2:23-CV-34-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) for judicial review of Defendant's denial of his application for supplemental security income benefits ("SSI").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in failing to consider whether Plaintiff's right arm injury resulting from a gunshot wound constituted a medically determinable severe impairment at Step Two. Although the ALJ mentioned the injury when assessing Plaintiff's residual functional capacity ("RFC"), it is not clear whether he

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 6.

properly accounted for all evidence relating to the gunshot wound and subsequent aggravating injury. The ALJ also erred in his evaluation of certain medical opinion evidence. Had the ALJ properly considered this evidence and assessed whether Plaintiff's arm injury was a severe impairment at Step Two, the RFC may have included additional limitations. Accordingly, these errors were not harmless, and this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

I.      **Factual and Procedural History**

Plaintiff filed an application for SSI on June 30, 2017, alleging disability beginning March 10, 2016, due to sleep disturbance, major depressive disorder, post-traumatic stress disorder ("PTSD"), and chronic post-thoracotomy pain. Dkt. 8; Administrative Record ("AR") 139, 161. After his application was denied at the initial level and on reconsideration, Plaintiff requested a hearing before an ALJ. AR 82, 91, 94. Plaintiff was represented by counsel at the hearing, which took place on December 14, 2018. AR 32. The ALJ issued an unfavorable decision on February 27, 2019, and the Appeals Council denied Plaintiff's request for review. AR 1, 15. Plaintiff then appealed to the United States District Court for the Western District of Washington. AR 432–34. On January 25, 2021, the Court reversed the Commissioner's decision, finding that the ALJ had erred in rejecting certain medical opinion evidence, and remanded the case for further administrative proceedings.[2] AR 435–40; *Ronnie R. v. Comm'r of Soc. Sec.*, No. 2:20-cv-00252-BAT, 2021 WL 236633 (W.D. Wash. Jan. 25, 2021).

---

[2] In December 2018, after the ALJ hearing, Plaintiff sustained a gunshot wound to his right arm. *See* AR 602, 981. He filed a second application for SSI on June 23, 2020, that included a claim of disability resulting from this injury. *See* AR 442–59. After this Court reversed and remanded the decision on Plaintiff's first SSI application, the two claims were consolidated for consideration by an ALJ. AR 460–62.

On August 4, 2022, an ALJ held a new hearing at which Plaintiff was represented by counsel. AR 373. The ALJ issued a written decision on September 8, 2022, again finding Plaintiff not disabled. AR 349–66. Plaintiff did not file written exceptions with the Appeals Council, making the September 2022 decision the final decision of the Commissioner. *See* AR 346–48. On January 6, 2023, Plaintiff appealed the Commissioner's denial of benefits to this Court. Dkt. 1.

Plaintiff maintains the ALJ erred by failing to properly evaluate certain medical opinion evidence and by failing to find Plaintiff's right arm injury from a gunshot wound to be a severe impairment. *Id.*

## II. Standard of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Evidence is "substantial" when it is "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## III. Discussion

Plaintiff does not challenge the ALJ's finding that his subjective symptom reporting is

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

less than fully credible and has therefore waived his right to do so. *See* Dkt. 13; AR 355; *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived."). Rather, Plaintiff argues that the ALJ did not properly evaluate certain medical opinions in the record and failed to support his findings, beginning at Step Two of the sequential evaluation, with substantial evidence. *See* Dkt. 13.

A. *Step Two Findings*

Plaintiff argues that the ALJ erred at Step Two of the disability evaluation when he failed to discuss Plaintiff's right arm injury following a gunshot wound or explain why it did not constitute a severe impairment. *Id.* at 16–17.

1. Legal Standard

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two of the evaluation process requires the ALJ to determine "whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant must provide relevant evidence to establish a medically determinable impairment, such as objective medical evidence (i.e., signs and laboratory findings) and medical opinions. 20 C.F.R. §§ 404.1512(a), 404.1513(a); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (holding the plaintiff failed to establish an impairment at Step Two when "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). To be considered "severe," an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'"

*Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 140.1521(b)). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

    2.   Step Two Assessment

Here, at Step Two, the ALJ found Plaintiff had the following severe impairments: penetrating chest injury status post clamshell thoracotomy, obstructive sleep apnea, depressive disorder, anxiety disorder, substance use disorder (alcohol), sarcoidosis, and PTSD. AR 351. He found the other impairments mentioned in the record, including obesity, asthma, and cough, to be non-severe. AR 351–52. The ALJ did not specifically address Plaintiff's arm injury in the Step Two discussion, noting only that "[f]indings on physical examination are often normal to include full strength and motion in [Plaintiff's] extremities[.]" *Id.* He acknowledged that "the record may contain other physical and mental diagnoses," but found the listed severe impairments "best capture [Plaintiff's] physical and mental conditions during the period at issue." AR 352. The ALJ wrote that he "nonetheless considered all of [Plaintiff's] allegations and impairments" in assessing his residual functional capacity. *Id.*

The record shows Plaintiff complained of continued pain, numbness, and weakness in his right arm after sustaining a gunshot wound in December 2018 requiring brachial artery repair. *See* AR 599–605, 609, 772, 789, 791, 799–800. After his then-18-month-old son "jumped on his arm" in November 2020, Plaintiff reported bruising, renewed pain, cramping, and muscle spasms. AR 742, 849, 967–68, 971, 975, 979, 984–85. On March 31, 2021, Dr. Hannah Van Patten conducted a physical exam and noted that Plaintiff's "[r]ight biceps muscle bulk is more proximal than normal on flexion[.]" AR 979–80. Dr. Van Patten discussed with Plaintiff "that his symptoms of cramping and spasm are likely related to the altered anatomy from the transection

of his right distal biceps from the [gunshot wound] in 2018" and referred him to physical therapy. AR 981.

On June 10, 2021, physical therapist Sarah Woodward noted Plaintiff's complaints of intermittent muscle spasms and cramping pain in his right biceps with activity or lifting. AR 975. Plaintiff rated the pain as a six out of ten and said that it tended to last one to two hours before resolving. *Id.* On physical examination, Ms. Woodward noted a "proximalization of [Plaintiff's] biceps on the right, normal grip strength and sensation." *Id.* She found slightly decreased elbow flexion on the right side "with cramping pain" and marked the passive biceps stretch as "painful." AR 976. In her assessment, she found "reduced strength, reduced bulk, and pain during passive tension" that indicated a "right biceps strain/tear." AR 977. She also opined that the tear was "chronic in nature at this point as onset with bruising, etc[.] was in November 2020." *Id.*

On August 10, 2022, Dr. Linchi Pham, Plaintiff's treating physician, assessed his ability to perform work-related activities. AR 992. Dr. Pham noted that Plaintiff had a weakened right bicep muscle and was unable to lift ten pounds or less. *Id.* She specified that Plaintiff had a limited ability to lift, push, and pull with his right arm and therefore was unable to climb ladders, work on cranes, or move machinery. AR 993–95.

In the ALJ's decision, he included citations to five pages in the record in support of his statement that "[f]indings on physical examination are often normal to include full strength and motion in [Plaintiff's] extremities[.]" AR 352. The first two citations reference progress notes from 2016 and 2017, before Plaintiff was shot. *See* AR 255–57, 275–76, 352. The next two cite to records from 2019, after the shooting but before the injury was aggravated. *See* AR 352, 791, 799–800. On August 2, 2019, the provider wrote that Plaintiff's "arm continues to improve, but

he still has pains in it with heavy lifting." AR 800. The note from the November 19, 2019, visit does not specifically mention any concerns with Plaintiff's arm injury. AR 791. Both records noted in the neurological section of the general physical exam that Plaintiff was "[m]oving all extremities equally." AR 791, 800. The ALJ's final citation references a provider note from Plaintiff's July 28, 2021, emergency room visit for severe chest pain. *See* AR 352, 956–58. The general physical exam from that visit includes the single line: "Musculoskeletal: Normal range of motion." AR 958. Given the urgent circumstances of the emergency room visit, this brief reference does not constitute more than a "mere scintilla" of support for the ALJ's finding. Taken together, these citations do not provide sufficient evidence to support the only finding at Step Two that could be considered a reference to Plaintiff's arm injury.

The failure to consider evidence of a diagnosis and limitations is error. *See Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995) (noting that an ALJ "may not reject significant probative evidence without explanation"). Here, the ALJ failed to discuss significant, probative evidence showing functional limitations in Plaintiff's physical abilities. This omission in assessing Plaintiff's severe impairments was error.

    3.   Harmless Error

The Commissioner argues that any error at Step Two was harmless because it would not have changed the ALJ's decision. Dkt. 16 at 8–9. "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "without

regard to errors that do not affect the parties' substantial rights." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (cleaned up). If an ALJ fails to find a severe impairment at Step Two but accounts for any limitations resulting from the alleged impairment in assessing RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with certain exceptions. AR 354. The exceptions relevant to Plaintiff's arm injury included: "he can never reach overhead; he can frequently reach at or below shoulder level; he can frequently handle and finger; . . . he can never crawl or kneel; [and] he can never climb ropes, ladders, [or] scaffolds[.]" *Id.* The ALJ wrote that he had considered all of Plaintiff's symptoms, medical opinions, and prior administrative medical findings. *Id.* He included "residual . . . gunshot wound symptoms such as right arm weakness" among Plaintiff's alleged disabilities. *Id.* He also listed some limitations relating to Plaintiff's arm injury among the alleged symptoms, including inability to lift, pain with movement, upper extremity weakness, post-shooting residual limitations, and difficulty with activities of daily living. *Id.*

Although the ALJ references Plaintiff's arm injury, it is not clear whether he properly considered all evidence relating to the gunshot wound and subsequent chronic biceps tear when determining Plaintiff's RFC. The RFC includes some limitations related to Plaintiff's arm injury but could have contained additional limitations if the ALJ had found a severe impairment from these injuries at Step Two. For example, the ALJ found that the Plaintiff could perform light work, which may include "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). Plaintiff's treating physician indicated that, because of Plaintiff's arm injury, he was unable to lift more than 10 pounds and had a limited ability to lift,

push, and pull with his right arm. AR 992–95. Because the ALJ did not articulate any evaluation of whether Plaintiff's arm injury constituted a severe impairment, the Court cannot determine whether he properly accounted for all evidence of these limitations in deciding the RFC. Accordingly, the Step Two error was harmful, and reversal is warranted.

B. *Medical Opinion Evidence*

Plaintiff contends that the ALJ also erred in failing to properly evaluate several medical opinions in the record and articulate his reasoning for rejecting those opinions. Dkt. 13 at 3.

1. Legal Standard

The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff filed his claim after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" *Id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs must consider every medical opinion or prior administrative medical findings in the record and evaluate each opinion's persuasiveness using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

The two most important factors affecting an ALJ's determination of persuasiveness are the opinion's "supportability" and "consistency." *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022)

(quoting 20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2)); *see also* 20 C.F.R. §§ 416.920c(c)(1), 416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

2. Medical Opinion Evaluation

Plaintiff challenges the ALJ's assessment of medical opinion evidence from Dr. Tasmyn Bowes, Psy.D.; Dr. Janis Lewis, Ph.D.; Mr. Tyler Robinson, LICSW, and Dr. Sara Silva, ARNP, DNP; and Dr. Linchi Pham, M.D. Dkt. 13 at 3–16. As the Court has found reversable error at Step Two, the Court declines to address all the alleged errors but notes the following in particular.

On March 18, 2020, Dr. Janis Lewis reviewed Plaintiff's medical records to evaluate his functional mental limitations and the severity of his mental disorders. AR 821–23. Based on her review of Plaintiff's mental health records, Dr. Lewis found severe limitations on Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and his ability to set realistic goals and plan independently. AR 822. She also found marked limitations in Plaintiff's ability to perform multiple other work-related activities. *Id.* Dr. Lewis diagnosed Plaintiff with PTSD and substance use disorder but noted that the impact on Plaintiff's ability to work was not primarily due to substance use. AR 823.

The entirety of the ALJ's discussion of Dr. Lewis' opinion reads:

> In March 2020, Janis Lewis, Ph.D., a non-examining consultant, reviewed the April 2019 opinion of Dr. Bowes and the August 2022 opinions of Ms. Silva and Mr. Robinson but did not appear to indicate to what extent, if any, she opined that the opinions of Drs. Lewis and Bowes were consistent with the record (10F).

AR 364.

This paragraph contains several errors. First, Dr. Lewis could not have reviewed the opinions of Dr. Silva and Mr. Robinson because their assessment was completed over two years after she reviewed Plaintiff's records. Also, it appears that Dr. Lewis' name was included in the last line by mistake, but it is not clear which provider the ALJ intended to reference. Finally, the ALJ failed to articulate the persuasiveness of Dr. Lewis' opinion or the factors supporting that assessment.

The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores*, 49 F.3d at 570–71 (quoting *Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence[.]" *Id.* at 571. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

Because the Court cannot determine if the ALJ properly accounted for the limitations included in Dr. Lewis' opinion in the RFC or simply ignored the evidence, the Court finds the ALJ erred. Had the ALJ properly considered all of Dr. Lewis' opined limitations, the RFC may have included additional limitations. Accordingly, the ALJ's error in considering Dr. Lewis' opinion is not harmless and requires reversal.

Lastly, a review of the ALJ's decision indicates that he relied on outdated medical opinion evidence in determining Plaintiff's RFC. The ALJ did not give weight to any records that accounted for the impact of Plaintiff's chronic arm injury on his physical and mental impairments. On remand, Plaintiff should be provided an opportunity to update the record, and the ALJ should reevaluate all medical records and opinions.

Case 2:23-cv-00034-DWC   Document 17   Filed 09/12/23   Page 12 of 12

## IV. Conclusion

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, the Commissioner's decision to deny benefits is reversed, and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 12th day of September, 2023.

*David W. Christel*
David W. Christel
Chief United States Magistrate Judge

DEFENDANT'S DECISION TO DENY BENEFITS
- 12